UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-136-F3

| | |
|---|---|
| R.W.; and BETTY S. ADAMS, )<br>   Plaintiffs, )<br>)<br>   v. )<br>)<br>WAKE COUNTY PUBLIC SCHOOLS; )<br>DEL BURNS, Superintendent (in his official )<br>and individual capacities); and )<br>NANCY SPENCER, E.C. Director (in her )<br>official and individual capacities), )<br>   Defendants. ) | ORDER |

This matter has been pending before the court on the defendants' Motion to Dismiss [DE-22] and the plaintiffs' Motion to Amend Complaint [DE-31]. The plaintiffs contend that they should be allowed to add allegations to their Complaint [DE-13] that would render moot the defendants' grounds for dismissal for failure to state a claim. The plaintiffs did not, however, supply a proposed amended complaint.

The plaintiffs are proceeding *pro se*. Although only Betty S. Adams signed the Complaint, the caption of the Complaint names as plaintiffs "R.W., Betty S. Adams," whom the appended "Plaintiff's Statement" describe, in pertinent part, as follows:

> 1. The Plaintiff, R.W. is a . . . young man who is supposed to have been diagnosed with initial speech, PPD/Speech Language Impaired, Other Health Impaired, Attention Deficit Hyperactivity Disorder, Speech & Language Impaired (per developmentally delayed 1/15/04 and behavioral problems), etc. He cannot read above a third grade level.[1]
>
> * * * * *

---

[1] At the time the Complaint was filed, R.W. may have been a minor. His age and other identifying information was redacted from the Complaint, pursuant to the eGovernment Act of 2002.

   3. Plaintiff Betty Sue Adams is the parent, natural guardian and next friend of the Plaintiff R.W.

Complaint [DE-31], Plaintiff's Statement ¶¶ 1, 3.

## BACKGROUND

At the time this civil action was instituted in the Spring of 2007, plaintiff R.W. was a high school student in the Wake County, North Carolina, public school system ("WCPSS"). His education for some time had been governed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, implemented by N.C. GEN. STAT. § 115C-116 (repealed 2006). *See Cone v. Randolph County Schools Board of Education*, 657 F. Supp. 2d 667 (M.D.N.C. 2009) (explaining administration of IDEA procedures in North Carolina before 2006).

On May 30, 2003, Ms. Adams filed a petition with the North Carolina Office of Administrative Hearings for an administrative "due process hearing" against WCPSS, listing eight disputed items. That "Contested Case," No. 03-EDC-0921, was resolved by a detailed Settlement Agreement and Consent Order executed on November 26, 2004, by Ms. Adams, a representative of the Wake County School Board ("the Board"), and Administrative Law Judge Fred G. Morrison, Jr. Dissatisfied with the manner in which the Consent Order was being implemented by the school district, Ms. Adams filed a Complaint on February 1, 2005, with the North Carolina Department of Public Instruction ("NCDPI") alleging violations of the federal IDEA and the state procedures, seeking enforcement of the Consent Order, and alleging additional non-specific violations of R.W.'s rights.

Following its investigation of the allegations, the NCDPI issued a Complaint Resolution Final Report ("Report") in Case No. 04-41, on April 5, 2005, containing detailed, lengthy and individualized findings, and required the WCPSS to take specific actions as to R.W. on or before

April 30, 2005, and more comprehensive actions affecting Exceptional Children enrolled at two named high schools on or before June 30, 2005. The cover letter accompanying the Report, addressed to the Superintendent of the WCPSS and to Ms. Adams, stated in pertinent part:

> The investigation report constitutes the [NCDPI's] final decision and its findings, conclusion, and reasons regarding the complaint. Findings of noncompliance were confirmed and corrective action is required. Please send documentation of your completed corrective action plan to . . . . Department of Public Instruction . . . by the dates specified on the report, and no later than June 30, 2005. Monitoring reports for the Settlement Agreements and Office of Administrative Hearing Decisions should be submitted within 30 days of completion of the actions. The file on this complaint will remain open and active pending the completion of the approved corrective action.

The letter was signed by the North Carolina Board of Education Department of Public Instruction Associate Superintendent of Curriculum and School Reform Services, Elise Leak, and the Director of the Exceptional Children Division, Mary Watson.

More than two years later, on May 24, 2007, the plaintiffs instituted this civil action alleging WCPSS's continued refusal to comply with the Consent Order has violated R.W.'s civil rights under the federal and state constitutions. Specifically, the plaintiffs contend the named defendants:

> still have not supplied the computer agreed to in the Agreement; the books promised in the Agreement were never provided; medical and Sylvan reading assessment bills were never paid; transportation reimbursement to Ms. Adams was never paid; the promised daily transportation to and from school for R.W.'s private speech and language services was not provided on a regular basis. In addition, the results of additional assessments for R.W. were falsified by the defendants on numerous occasions.
>
> The written [Individual Educational Plan, ("IEP")] for R.W. remains falsified, inaccurate and inadequate to meet R.W.'s needs.

Complaint [DE-13] ¶¶ 22, 23. The pro se Complaint alleges, *inter alia*, willful and wanton "deliberate indifference" by the defendants to R.W.'s civil rights, *id.* ¶¶ 24-26, proximately resulting in R.W.'s inability to read beyond a third grade level such that his illiteracy interferes with every aspect of his life, causing extreme humiliation, shame and embarrassment. *Id.* ¶ 28.

3

It contends that "[t]he written IEP for [R.W.] remains falsified, inaccurate and inadequate to meet [R.W.'s] needs . . . and that it "was not designed to close the gap between [R.W.'s] ability and achievement, nor did it propose any specific measurable gain." *Id.* ¶ 23.

The Complaint purports to state four claims against all named defendants, and a fifth claim against the individual defendants only. The designation of these claims, and the damages plaintiffs seek as to each, are as follows:

FIRST CAUSE OF ACTION: "Violation of the NC Constitution [sic] Right to Equal Access to a Sound Public Education," seeking compensatory damages for R.W.'s loss of earning capacity, out-of-pocket expenses, personal humiliation and mental anguish;

SECOND CAUSE OF ACTION: "Deprivation of Equal Protection Rights under the N.C. Constitution and the Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. 1983," seeking compensatory damages 42 U.S.C. § 1983 for the deprivation of R.W.'s constitutional rights resulting in loss of earning potential, humiliation and personal anguish;

THIRD CAUSE OF ACTION: "Fourteenth Amendment Substantive and Procedural Due Process Deprivations in violation of 42 U.S.C. 1983," seeking compensatory damages under § 1983 for the deprivation of R.W.'s constitutional rights resulting in loss of earning potential, humiliation and personal anguish;

FOURTH CAUSE OF ACTION: "Conspiracy to Deprive the Civil Rights of Plaintiff in Violation of 42 U.S.C. 1985(3)," seeking compensatory damages as a remedy for the defendants' violation of § 1985(3)); and

FIFTH CAUSE OF ACTION: "Punitive Damages Under Section 1983 against Defendants Burns and Spencer in their Individual capacities," (seeking compensatory and punitive damages to deter others from like conduct).

4

The plaintiffs also seek an award of reasonable attorneys' fees and costs on all counts should they be "forced to hire an attorney to represent them."

## STANDARD OF REVIEW

On a motion to dismiss, this court's obligation is to test the sufficiency of the complaint to determine if it alleges a claim for which relief can be granted. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In so doing, the court evaluates the complaint in its entirety, as well as those documents attached to it, along with any that are integral and authentic. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

> A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). And the legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted).

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Furthermore, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 386 (4th Cir.), *cert. denied*, 130 S. Ct. 1740 (2009).

The plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged.'" *Nemet Chevrolet. Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)). The complaint need not set forth "detailed factual allegations," but instead simply must "plead sufficient facts to allow a

5

court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.' " *Id.* at 256 (quoting *Iqbal*, 129 S. Ct. at 1949-50). In evaluating the factual content necessary to survive a motion to dismiss, however, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Id.* at 255 (citing *Iqbal*, 129 S. Ct. at 1949, 1951-52; *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009)) (internal quotation marks omitted).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task. . . .' " *Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 129 S. Ct. at 1950). If the properly considered factual allegations, viewed in context, fail to "nudge [ ] . . . claims across the line from conceivable to plausible, the [ ] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of that line. . . ." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

Pro se complaints are construed liberally and must meet "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *see also Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (noting that pro se complaints "must be held to less stringent standards than formal pleadings" but that "even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct' ") (citations omitted), *cert. denied*, 130 S. Ct. 2064 (2010).

## ANALYSIS

The plaintiffs have taken great care to explain that they "are not suing for IDEA violations in this case – we've already done that in due process." Plaintiffs' Response and Motion to Amend [DE-30], p. 4. Elaborating on that premise, plaintiffs state,

> [w]e claim that the Defendants' conduct (or more accurately, misconduct) goes beyond the mere failure to provide special needs services to R.W. , and we deserve an opportunity to **prove** it. . . . [T]he constitutional right to a sound, basic education established in North Carolina law applies to students, such as R.W. It is absurd for the Defendants to suggest that the local school district is not subject to the constitutional requirements of this State. . . .

*Id.* (emphasis in original). Plaintiffs explain that they are entitled to monetary compensation for injuries resulting from the defendants' *unconstitutional* conduct, as distinguished from injuries incurred by the defendants' violations of the *statutory* requirements of the IDEA and of N.C. GEN. STAT. § 115C-109.1., *et seq.*, for which monetary compensation is *not* an available remedy. The federal constitutional rights identified in the Complaint are R.W.'s equal protection and due process rights guaranteed by the Fourteenth Amendment.

A. *Standing*

Although Ms. Adams is named as a plaintiff, has signed the Complaint, and explains she is R.W.'s "parent, natural guardian and next friend," [2] the Complaint does not allege that WCPSS has violated *her* rights under the North Carolina or federal constitutions. Conversely, although he is named as a party to the Complaint that purports to allege only violations of his constitutional rights, R.W. has not signed it. In fact, taking as true the allegations in the Complaint concerning R.W.'s limitations, it is questionable whether he personally is capable of pursuing these claims.

---

[2] Ms. Adams neither has sought nor obtained appointment by this court as R.W.'s guardian or next friend, and has not proffered proof of such appointment in another court. *See* Local Rule 17.1 (E.D.N.C.).

7

Even if the Complaint could be said to sufficiently allege violations of R.W.'s constitutional rights, Ms. Adams lacks standing to pursue them in this court. *See Smith v. Frye*, 488 F.3d 263, 272 (4th Cir.) (explaining ,"[i]t is well settled that under Article III of the United States Constitution, a plaintiff must establish that a 'case or controversy' exists ' between himself and the defendant' and cannot rest his claim to relief on the legal rights or interests of third parties' ") (citations omitted), *cert. denied*, 552 U.S. 1039 (2007); *see also Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005). "An individual unquestionably has the right to litigate his [or her] own claims in federal court, before both the district and appellate courts. . . . The right to litigate for oneself, however, does not create a coordinate right to litigate for others." *Id.*

In light of its concern for "protect [ing] the rights of those before the court . . . and jealously guard[ing] the judiciary's authority to govern those who practice in its courtrooms, . . . [the United States Court of Appeals for the Fourth Circuit recently] join[ed] the vast majority of [its] sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court." *Id.* at 400-01. [3] "Where the owner of a claim is a minor

---

[3] The law is different as to claims brought pursuant to the IDEA. The Supreme Court recognized in *Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516, 535 (2007), that parents enjoy their own independent enforceable rights under the IDEA to the substantive adequacy of their child's education, and may prosecute such claims, *pro se*, in federal court. The Court expressly declined to address, however, whether a parent may litigate his or her *minor child's* IDEA claims in a *pro se* capacity. *See id.*; Samuel Flaks, *Nathan Isaacs's IDEIA: Legal Evolution and Parental Pro Se Representation of Students with Disabilities*, 46 HARV. J. ON LEGIS. 275, 294 (2009) ("*Winkelman* also did not seriously call into question the prevailing rule that a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney") (footnote omitted)). Of course, in this case, Ms. Adams asserts no claims – hers or R.W.'s – under the IDEA, and she is neither represented by an attorney, nor appears in a representative capacity.

8

or incompetent person, therefore, unless that claimant is properly represented by a guardian *ad litem*, next friend, or other suitable fiduciary, and that representative either is, or is represented by, an attorney, the court should not issue a ruling as to whether the complaint states a claim on which relief may be granted." *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 135 (2d Cir. 2009); *see also B.D. ex rel. Dragomir v. Griggs*, No. 1:09CV439, 2010 WL 2775841 (W.D.N.C. July 13, 2010); *Verbal v. Krueger*, No. 1:09CV990, 2010 WL 276644, at *2-3 (M.D.N.C. January 15, 2010).

*Smith* and *Myers* control here because Ms. Adams purports in her individual, *pro se* capacity to prosecute claims that WCPSS violated R.W.'s federal constitutional rights pursuant to § 1983 and § 1985(3). In none of Counts Two, Three, Four and Five has she alleged any facts that conceivably could be construed as stating such a claim against WCPSS for violation of *her own* federal constitutional rights.

Count One is a pendant state claim for monetary damages resulting from the defendants' purported violations of R.W.'s rights under N.C. CONST. art. I, § 15, and N.C. CONST. art. IX, § 2, which "combine to guarantee every child of this state an opportunity to receive a sound basic education." Complaint ¶ 36. The Complaint alleges, *inter alia*, that the defendants' "failure to provide Plaintiff equal access to a sound basic education as his nondisabled peers," *id.* ¶ 39, has caused him to "suffer personal humiliation and mental anguish because he cannot function independently due to his inability to read or write. He cannot fill out job applications, read menus, write a check, read road signs, and all [sic] of the daily tasks that require literacy." *Id.* ¶ 44. For the same reasons set forth with regard to the federal constitutional claims, Ms. Adams lacks standing to litigate alleged violations of R.W.'s rights under the North Carolina constitution.

9

B. *Sufficiency of Allegations*

Even if this action had been brought by a party with standing such that the court could exercise subject matter jurisdiction, the Complaint fails to state any claim upon which relief may be granted. As to Count One,

> [n]o North Carolina appellate court has yet recognized a private right of action for damages under the North Carolina Constitution against a local board of education for the denial of the privilege of education. *See Hoke County Bd. of Educ. v. State*, 358 N.C. 605, 635, 599 S.E.2d 365, 389 (2004). In *Hoke County Board of Education*, the North Carolina Supreme Court rejected the State of North Carolina's argument that the local school board should be responsible (at least in part) for the documented failings of its schools and students. *Id.* at 635, 599 S.E.2d at 389. Given that no North Carolina appellate court has recognized the right and the remedy that plaintiffs advance in their complaint, this federal court will not create such a right of action. *See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314-15 (4th Cir. 2007) ("[A] federal court should not create or expand a State's public policy [or] elbow its way into [a] controversy to render what may be an uncertain and ephemeral interpretation of state law." (citations omitted)). Accordingly, plaintiffs have failed to state a claim upon which relief may be granted.

*Frye v. Brunswick County Bd. of Educ.*, 612 F. Supp. 2d 694, 707-08 (E.D.N.C. 2009); *see also Collum v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:07cv534-RJC-DSC, 2010 WL 702462 (W.D.N.C. Feb. 23, 2010).

The factual basis for the claims in Counts Two, Three, Four and Five is that R.W.'s rights to "equal protection" and "due process" under the North Carolina and United States constitutions have been violated by defendants' "consistent denial of appropriately trained and certified reading instructors and instruction to middle school and high school disabled students," resulting in a custom or usage adopted as a practice, custom and policy by the WCPSS. Plaintiffs cite the Fourteenth Amendment to the United States Constitution; N.C. CONST. art. 1, § 19; and 42 U.S.C. §§ 1983 and 1985(3). With regard to the federal constitutional claims, purposeful discrimination,

10

involves a decisionmaker's undertaking a course of action " 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Ibid.* It follows that, to state a claim based on a violation of a clearly established right, [a plaintiff] must plead sufficient factual matter to show that [defendants] adopted and implemented ... policies at issue not for a neutral ... reason *but for the purpose of discriminating on account of race, religion, or national origin.*

*Iqbal,* ___ U.S. at ___, 129 S. Ct. at 1948-49 (emphasis added).

The Complaint herein contains no allegations whatsoever that the defendants acted and/or failed to act because of the adverse effects it would have on the plaintiffs as members of a specific race, followers of a particular religion, or because of their national origin. Nor does the Complaint allege that either named plaintiff has suffered the effects of purposeful discrimination by defendants' denial of any federally-recognized fundamental right on account of their race, religion, or national origin. Rather, the factual allegations describing the defendants' purported federal constitutional violations identify "denial of equal access to certified reading remediation," "to a sound basic education," and "to appropriately trained and certified reading instructors and instruction" to R.W. and "similarly situated disabled" middle and high school students. Complaint [DE-31] ¶¶ 48-52.

The Supreme Court has determined that differential treatment of the disabled is analyzed just as any other economic and social legislation, and should be considered under the deferential rational basis test. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 441-42 (1985) (explaining that, "where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end"); *see also Glenn v. Brumby,* ___ F.

11

Supp. 2d ___, No. 108-CV-2360-RWS, 2010 WL 2674413 (N.D. Ga. July 2, 2010) ("The Equal Protection Clause protects individuals with disability and illness (physical and mental) from discrimination by the states[,] and . . . laws classifying individuals on such a basis must meet rational basis scrutiny") (citing *Cleburne*, 473 U.S. at 446)). Under that test, there is no equal protection violation unless the plaintiff can show that there is *no* rational relation between the differential treatment and a legitimate government interest. *Id.* at 440. The states have wide latitude, and such legislation is presumed to be valid. *Id.* Here, there are no allegations in the Complaint that, taken as true, even suggest a ground on which that presumption could be rebutted.

### C. *Motion to Amend*

The plaintiffs' Motion to Amend the Complaint [DE-31] does not propose amendments that would cure the fatal defects identified herein. Specifically, plaintiffs suggest that they should be permitted to amend the Complaint to allege, *inter alia*:

> (1) additional facts regarding the individual defendants – especially Defendant Nancy Spencer's direct involvement with the Plaintiffs – which further support the allegations in Complaint paragraphs 69-71 and further demonstrate the deliberate indifference, etc., resulting in the harm to R.W. as alleged; (2) additional facts we've uncovered to support the federal constitution and conspiracy claims; (3) more details about the Defendant Board's actual or constructive knowledge of the facts as we alleged; (4) more factual information about the Defendants' policy, practice and/or custom as we alleged.

Plaintiffs' Response [DE-30], pp. 1-2. None of these proposed amendments would confer subject matter jurisdiction on this court by establishing Ms. Adams' standing to prosecute the claims she has raised, or cure the failure of the plaintiffs' factual allegations to state claims cognizable under §§ 1983, 1985(3), or the North Carolina Constitution.

12

## ORDER

Accordingly, it is ORDERED that this action is DISMISSED for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). No party seeking to invoke this court's jurisdiction has pled any facts demonstrating his or her standing to prosecute the claims raised in the Complaint.

Because this court lacks jurisdiction to do so, it does not reach the defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiffs' Motion to Amend is DENIED [DE-31] as futile for reasons set forth herein.

The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 1st day of September, 2010.

                                          JAMES C. FOX
                                          Senior United States District Judge